Stanley C. Olson v. Commissioner. Buford W. Olson and Demores Olson v. Commissioner. Chas. Olson & Sons, Incorporated v. Commissioner.
Olson v. Commissioner
Docket Nos. 64836-64838.
United States Tax Court
T.C. Memo 1958-56; 1958 Tax Ct. Memo LEXIS 173; 17 T.C.M. (CCH) 287; T.C.M. (RIA) 58056; April 9, 1958
*173 Held, that parts of amounts deducted by the corporate petitioner as expenditures for officers' travel and entertainment, and also use of company automobiles, are to be disallowed and, as hereinafter determined, are to be included in income of individual petitioners; and Held further, that the amounts so disallowed are not allowable as deductions to the corporate petitioner as reasonable compensation paid to corporate officers. Joseph A. Maun, Esq., for the petitioners. Ray H. Garrison, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies for the taxable year 1952 as follows: Amount
Petitioners
of Deficiency
Stanley C. Olson
$2,537.02
Buford W. Olson and Demores Olson
2,407.28
Chas. Olson & Sons, Incorporated
3,579.21
*174 The issues relate to respondent's disallowance, as deductions by corporate petitioner and inclusion in income of the individual petitioners, of personal expenditures by the individuals and reimbursement thereof by the corporation for travel, entertainment, and personal use of company automobiles. An alternative contention by the corporate petitioner is that if any amounts are disallowed as deductions for travel, entertainment or automobile expense, they should nevertheless be allowed as reasonable compensation paid to corporate officers. Findings of Fact Part of the facts are stipulated and are incorporated herein by reference. Chas. Olson & Sons, Incorporated, was incorporated under and exists by virtue of the laws of the State of Minnesota. It has its principal place of business at 2945 Pillsbury Avenue, Minneapolis, Minnesota. Stanley C. Olson is an individual residing at Howards' Point, Route 2, Excelsior, Minnesota. Buford W. and Demores Olson are individuals residing at Hopkins, Minnesota. The 1952 Federal corporation income tax return for Chas. Olson & Sons, Incorporated, was filed with the director of internal revenue, St. Paul, Minnesota. During the taxable year *175 1952 and years preceding, Chas. Olson & Sons, Incorporated, kept its books and records, and filed its Federal income tax returns on an accrual basis of accounting. The income tax return for 1952 of Stanley C. Olson and Mae G. Olson was filed with the director of internal revenue, St. Paul, Minnesota. Subsequent to filing their 1952 return, Mae G. Olson died without property and no representative has ever been appointed to represent her. The estate of Mae G. Olson is not a party to this proceeding. During 1952 and preceding years, Stanley C. Olson and Mae G. Olson filed their Federal income tax returns on the cash receipts and disbursements basis of accounting. The joint income tax return for 1952 of Buford W. and Demores Olson was filed with the director of internal revenue, St. Paul, Minnesota. During 1952 and preceding years, Buford W. and Demores Olson filed their Federal income tax returns on the cash receipts and disbursements basis of accounting. Chas. Olson & Sons, Incorporated, is the outgrowth of a blacksmith shop started by Charles Olson, father of Stanley C. and Buford W. Olson, in 1890. Before World War I, the business was expanded to include buggy building and wagon *176 building. With the advent of the gasoline engine, the business was adapted to the manufacture and design of special bodies for users of heavy motor equipment. This branch of the business sells its products to the large public utilities, railroads and co-operative power organizations in Minnesota, Wisconsin, the Dakotas and adjacent areas. The business has also expanded to include the exclusive distributorships for dump truck body manufacturers, school bus body manufacturers, grain and stock truck body manufacturers, and some special manufacturers of truck bodies for utility companies. The company has many active competitors in Minneapolis, Minnesota; Duluth, Minnesota; Fargo, North Dakota; and Sioux Falls, South Dakota. During the period here involved, Chas. Olson & Sons, Incorporated, had issued and outstanding 45,000 shares of Class "A" common stock, and 15,000 shares of Class "B" common stock which was owned by the following individuals in the following amounts: Owner
Class A
Class B
Stanley C. Olson
12,420
7,495
Buford W. Olson
12,820
7,495
Buford W. and Stanley C.
Olson
none
10
Mrs. Barbara Kane
4,590
none
Buford W. Olson, Jr.
4,590
none
Stanford Olson
4,590
none
Chas. Olson
4,590
none
Robert W. Warren
900
none
Eldred Nelson
500
none
45,000
15,000
*177 The following is a summary of the classification of sales of Chas. Olson & Sons, Incorporated, for the taxable years 1949 through 1952: 1949
1950
1951
1952
Repairs and Painting
$ 109,272.43
$ 114,720.08
$ 112,596.09
$ 120,632.24
School Buses
423,198.02
663,777.12
952,272.22
934,163.23
Custom Body
100,414.08
162,404.56
186,424.15
157,794.76
Dump Body
154,062.35
174,533.57
301,887.45
258,109.16
Accessories
366,981.89
447,020.54
459,767.94
681,845.98
Truck Equipment
289,810.62
440,547.83
503,647.86
124,067.70
$1,443,739.39
$2,003,003.70
$2,516,595.71
$2,276,613.07
During the years 1949 to 1952, inclusive, the company's claimed travel and entertainment expenses incurred by employees and officer-stockholders were as follows: For 1949, a total of $32,621.34, being 2.26 per cent of sales; in 1950, $19,909.21, being.99 per cent of sales; in 1951, $18,164.66, the ratio to sales being.72 per cent; and in 1952, $22,170.47 with a ratio to sales of.97 per cent. Stanley C. Olson, secretary-treasurer of Chas. Olson & Sons, Incorporated, is fifty-six years of age, and has been with the business for thirty-six years. In addition *178 to his duties as secretary-treasurer, Stanley C. Olson is in charge of sales of school bus bodies and all other manufactured truck bodies for which the company is distributor. Serving under him are a sales manager and thirteen other salesmen. The personnel policies of the Sales Department are his responsibility. He also supervises and directs the company's advertising program and expenditures. Buford W. Olson, president of Chas. Olson & Sons, Incorporated, is fifty-nine years of age, and has been with the business for forty-two years. In addition to his duties as president, he is in charge of all sales of the company's specially manufactured truck bodies. He designs such equipment to meet the customers' needs and oversees the manufacturing phase of the business. During the taxable year 1949 and up to June of 1950, BufordW. Olson and Stanley C. Olson were each paid a salary by Chas. Olson & Sons, Incorporated, at the rate of $30,000 per annum. From July 1950 to the end of 1952, Buford W. Olson and Stanley C. Olson were each paid a salary at the rate of $36,000 per annum. During the years 1949 through 1952, Buford W. Olson and Stanley C. Olson each received an annual bonus based *179 upon a prescribed formula authorized by the board of directors of Chas. Olson & Sons, Incorporated, at the rate of five per cent of net profits before taxes, but in no event to exceed $12,500. During the taxable years 1949 through 1952. Stanley C. Olson and Buford W. Olson, as corporate officers, each received salaries, commissions and bonuses, and Chas. Olson & Sons, Incorporated, deducted as salaries, commissions and bonuses, the following amounts: (Differences are due to variances between cash and accrual methods of reporting income.) Deducted by Chas.
Olson & Sons,
Received by
Incorporated,
Year
Each Officer
for Each Officer
1949
$42,500.00
$30,805.11
1950
33,805.11
39,122.17
1951
42,122.17
44,328.64
1952
44,328.64
41,902.00
For the taxable years 1951 and 1952, Chas. Olson & Sons, Incorporated, had a qualified Profit Sharing Plan and Trust, and paid therein for the benefit of Buford W. Olson the amounts of $5,739.20 and $3,350.99, respectively. The same amounts for the same periods were paid therein for the benefit of Stanley C. Olson. During the year 1952, Buford W. and Stanley C. Olson were required to entertain substantial *180 numbers of customers of their employer, Chas. Olson & Sons, Incorporated, as well as numerous factory representatives, agents and others representing potential sources of business. Each kept daily contemporaneous records of amounts spent with notations as to the occasion or circumstance, such as lunch, dinner, sales meeting, whiskey, entertainment, miscellaneous and the like, or the names of individuals, or a reference by group names, or a reference to the types of persons entertained, such as customers or salesmen. The entries were made in memorandum books known as "Beach's Common Sense" booklets and are in the handwriting of each officer. The amounts recorded in the booklets were totaled monthly and delivered to a company employee who prepared a check for reimbursing the officers for such expenses. The only lump sum entry was an item of $400 as the allocated portion of business expense of a trip to California which was partly for vacation. Stanley C. Olson used one booklet each week and Buford used one each month. These booklets were part of the company's records and were made available to revenue agents. During the entire month of February 1952. Stanley C. Olson and his wife took *181 a trip to California that was part business and part pleasure. They traveled by train or airplane and stayed at hotels. Olson had conferences with manufacturers in similar businesses and studied their operations and sales policies. Entertainment expenses were incurred. At the time, Olson made a calculation of the costs of this trip allocable to business at $400. Buford Olson entertained customers and suppliers at his home and claimed no reimbursement from the company for such home entertainment. For the taxable years 1949 through 1952, Chas. Olson & Sons, Incorporated, charged its automobile expense account the respective amounts of $5,293.53, $5,933.17, $5,660.74 and $6,744.36. This account was charged with the cost of fuel, repairing and maintaining company-owned vehicles. During the year 1952, Stanley C. Olson owned a Mercury automobile and Buford W. Olson owned a Ford station wagon. During the year 1952, Buford W. Olson and Stanley C. Olson drove company cars. The cars were used to make calls on customers and manufacturers' representatives, and to make short business trips up to sixty or seventy miles. The cars were also driven by each from their homes to the Chas. Olson *182 & Sons, Incorporated, plant and return. Their personal cars were driven to and from work at times. Their wives never drove the company cars. Other company employees at times used the company cars. Business calls would be made during office hours and at times on the way to and from the plant. Buford Olson lived fourteen miles from the plant and Stanley C. Olson lived eighteen miles away. Each customarily worked five days a week, approximately twelve Saturdays a year, and made frequent business trips. Stanley C. Olson was in Florida during the entire month of February 1952, and did not use the company car during this month. No use by Stanley C. Olson of the company car was made during several long business trips that lasted at least one week. Chas. Olson & Sons, Incorporated, incurred deuctible entertainment expenses in the total amount of $8,308.63 (representing 75 per cent of a total of $11,078.17 paid to Buford and Stanley Olson in reimbursement of claimed travel and entertainment expenses) during the taxable year 1952 which to the extent of $8,308.63, were ordinary and necessary to its business operations. The business expenditures of Buford and Stanley Olson for travel and entertainment *183 expenses for 1952 were, respectively, $4,033.19 and $4,275.44. Chas. Olson and Sons, Incorporated, deducted the amount of $1,005 as part of its automobile expense, of which amount $440 was paid to Buford Olson and $565 to Stanley Olson in part reimbursement for claimed business expenditures. Said expenditures are attributable to personal use of company automobiles by Buford and Stanley Olson and do not represent business expenditures. No part of the amounts paid by Chas. Olson and Sons, Incorporated, to Buford and Stanley Olson, purporting to be in reimbursement of travel and entertaining expense or automobile expense, represented additional salary or other compensation to Buford or Stanley Olson for services to the corporation. Opinion The corporate petitioner, for the year in question, deducted $11,078.17 as representing reimbursement of $5,377.59 to Buford Olson, president of the company, and $5,700.58 to Stanley Olson, secretary-treasurer, for travel and entertainment expenses paid out by them in the course of their duties on behalf of the company. Respondent disallowed one-half of the deduction taken by the corporation, and added to income of Buford and Stanley one-half *184 of the respective amounts which they so received. Respondent does not question the fact that the brothers paid out the sums in question or that they were reimbursed therefor. His position is that the payments are not substantiated as business expenses because, with respect to the items of entertainment (largely for lunches and dinners for various individuals and groups), in many instances the Olsons were unable (or unwilling) to furnish the names of the persons entertained, the kind of entertainment, or specifically, at least, the business purpose of the entertainment. Respondent also maintains that part of such expenditures were for personal expenses. Petitioners maintain, however, that the Olsons kept meticulous accounts in memorandum books, showing the amount of each item of expenditure, and that all such expenditures were proper business expenses. The burden of proof, of course, rests with petitioners. To the extent that it involves deductibility of particular items of business entertainment expense, it is clear that petitioners are required, in addition to proving that the expenditures were made, to show the nature of the entertainment item and its business purpose. To hold *185 otherwise would permit taxpayers to constitute themselves judges of the law and fact. (What we have said with respect to establishing the deductibility of particular items is not intended as a restriction upon the applicability, in a proper case, of the principles established in Cohan v. Commissioner, 39 Fed. (2d) 540 (C.A. 2, 1930). In the instant case, both of the Olsons admitted that they could not recall the names of a large number of the persons entertained. This could obviously have been avoided if the names had been noted at the time the items were paid, together with the information relating to the amounts recorded in their memorandum books. In some instances, they did so. In most, they did not. They were questioned by the revenue agent during the administrative stages of the case, and were then unable to recall most of the names. Stanley objected to furnishing to the agents some of the names he could remember because he thought it would be a bad situation "to tell who the folks were, what companies they were with * * *." The nature of the entertainment is for the most part adequately covered. The business purpose is described largely in general terms as entertainment *186 of customers, and representatives of suppliers and others who referred customers to the Olson company. An indication of the practical insufficiency of proof of specific items of deduction in the instant case is the failure to prove elimination of amounts to be regarded for tax purposes as personal expenditures. It is evident, as contended by respondent, that the brothers shared in their own hospitality at meals for entertainment purposes. In any event, such sharing, even when occurring in their home city, is not negatived in the record. This may well have been proper when they were in travel status for business purposes, because the cost of their own meals would be allowable as travel subsistence. Much of the entertaining, however, was in their home city of Minneapolis, in respect of which deductions may not be allowed for amounts paid for their own meals except to the extent that the cost thereof exceeded, for business purposes, their own reasonable personal requirements. In this connection, we said, in Richard A. Sutter, 21 T.C. 170 (1953) at 173: "It seems to us that while each situation will of course be governed by its individual facts the general principle necessarily *187 emerges somewhat as follows: The cost of meals, entertainment, and similar items for one's self and one's dependents, at least, if not incurred while away from home in the pursuit of one's business, see section 23(a)(1)(A), Internal Revenue Code, is ordinarily and by its very nature personal expenditures forbidden deduction by section 24(a)(1). The presumption, no doubt rebuttable, must accordingly arise that such costs are nondeductible. In addition to the burden imposed by the necessity of overcoming respondent's determination we think the presumptive nondeductibility of personal expenses may be overcome only by clear and detailed evidence as to each instance that the expenditure in question was different from or in excess of that which would have been made for the taxpayer's personal purposes." * * * We think it apparent from what we have said that petitioners have failed to meet the burden of proof with respect to numerous specific items which they claim to be allowable as entertainment expenses. At the same time, we are convinced that they have circumstantially established the allowability of entertainment and travel expenses materially in excess of the *188 amounts allowed by respondent. We have no doubt of the veracity of the Olson brothers. Respondent concedes that the amounts in question were actually paid. It is true that names are lacking, but, subject to disallowance of amounts which were or may have been personal expenditures, we are satisfied, upon the whole record, that the payments were made for entertainment (travel expense is not in issue except for estimated business share of the cost of a trip to California which was partly for pleasure) and that the entertainment was of the type of persons and under circumstances directly related to the business benefits expected. See Louis Boehm, 35 B.T.A. 1106, 1110. Obviously, in determining the amounts allowable, we must resolve any doubts against petitioners, who bear the burden of proof. Keeping this principle in mind, and after meticulous examination of the record, we think there is no reasonable possibility that more than 25 per cent of the total reimbursement of $11,078.17 to Buford and Stanley represented other than allowable business expenses for travel and entertainment. Accordingly, we allow the corporate petitioner a deduction of $8,308.63, and disallow $2,769.54. *189 Consistent with the foregoing, we reduce the amounts to be added back to the income of Buford and Stanley to the respective amounts of $1,344.40 and $1,425.14. The next issue to be considered relates to the action of the respondent in disallowing automobile expense of the corporate petitioner in the amount of $1,344 and, correspondingly, adding to income of Buford and Stanley the respective amounts of $588 and $756. The testimony and contentions of the parties revolve around estimates and calculations of the amounts to be attributed to personal use of company automobiles by the Olson brothers. The issue does not merit extensive discussion, since it would serve no useful or significant purpose. We have carefully reviewed the contentions and the evidence offered in support thereof. Both Olsons, in effect, admit some personal use in driving the respective Cadillacs from home to office and return. Each testifies, without supporting detail, that on various unspecified occasions, they dropped off to see customers or suppliers or their representatives in the course of coming to and returning from their place of business. A precise computation is impossible, and none of the contending *190 parties suggest otherwise. The burden of proof rests with petitioners. Upon consideration of all the facts and circumstances, we hold, as indicated in our Findings, that the respective amounts to be added to Buford's and Stanley's income for reimbursed expenses attributable to personal use of company-owned cars is $440 and $565, and that the deduction taken by the corporation is to be reduced by a total of $1,005. For completeness, we refer briefly to the contention that, to the extent we might otherwise disallow any part of the claimed travel, entertainment and automobile expenses as deductions by the corporation, we should allow such amounts as deductions for additional salaries or other compensation paid to the Olson brothers as corporate officers. This is obviously an afterthought. There is nothing in the record to show that any such additional compensation was intended or expected, and the record fails to support the view that any such amounts, when related to the substantial salaries, commissions and bonuses accrued to or received by each of the brothers from Chas. Olson & Sons, Incorporated, for 1952, were reasonable. (See Findings and Stipulation, paragraphs 10 and 11.) *191 We, therefore, reject the contentions urged in this respect. We have considered Williams v. United States, 245 Fed. (2d), 559 (C.A. 5, 1957). The facts there presented differ widely from those before us, and we find nothing in the case calculated to persuade us to apply it here. Decisions will be entered under Rule 50.